(No. 74-653—)

DR. J. PETER MAHER, Claimant, *vs.* STATE OF ILLINOIS, BOARD OF GOVERNORS OF STATE UNIVERSITIES AND COLLEGES, Respondent.

*Opinion filed May 10, 1976.*

GOLDMAN and HESSER, Attorneys for Claimant.

138

WILLIAM J. SCOTT, Attorney General; DUNN, BRADY, GOEBEL, ULBRICH, MOREL & JACOB, by FRANK BRADY and MARIAN S. K. MING, of Counsel for Respondent.

HOLDERMAN, J.

Claimant was a professor employed at Northeastern Illinois University in the Department of Linguistics. He had been employed at the University since September, 1964.

The Claimant in his complaint alleges that he and the University, through its officers and agents, entered into an employment contract which provided that the Claimant would engage in a full-time summer work program at the University, and he was to be paid the sum of $3,540.00.

Claimant further alleges that part of this contract was written and part was oral.

He alleges that he did not seek other employment for the summer in question and did not accept any other offers of employment for this particular time.

The complaint further states that Claimant was notified on April 20, 1973, that he would not receive the agreed upon compensation but would only receive compensation in the amount of $1,770.00, which was 50% of the original compensation, and this was the amount paid to Claimant for the summer period.

Claimant contends that by reason of the breach of said contract, he is entitled to damages in the amount of $1,770.00.

Claimant further contends that a memorandum from his Department Chairman, Dr. Joseph Beaver,

dated January 23, 1973, constituted a contract of employment, or in the alternative there was an "oral understanding" of employment status and salary which created a binding and enforceable contract.

The evidence shows that on April 20, 1973, Claimant was notified that he would not receive the agreed upon compensation. Claimant states that he was informed he would not be paid the additional amount because the legislature did not appropriate the amount of money originally contemplated by the University, and that any demand for further services would not be paid because the payments had lapsed.

It is Respondent's contention that if a contract was created either by a memorandum dated January 23, 1973, from Dr. Beaver to Dr. Maher, or if there was oral communication between the two, Claimant has the burden of proof.

Claimant was offered a contract to teach for the 1972-1973 academic year, as shown by Respondent's Exhibit A, which provided for the teaching on a ten-month schedule. It further provided that Dr. Maher was to be compensated at $1,770.00 per month for the period of the contract. The contract did not specify which months of the academic year Dr. Maher was to teach. The contract did, however, expressly state that the ten-month employment need not be consecutive.

At the time the contract was entered into, the University was on a three term system, which was set up in such a way that the Dean of the College planned the May-June months separate and distinct from the other terms. In doing this, the scheduler had to rely on appropriations from the legislature. Respondent states that this fact was common knowledge to all faculty members at Northeastern, including Dr. Maher.

In November of the academic year in question, the question arose in the Department of Linguistics as to which members would be interested in teaching for a full twelve months rather than ten months should there be enough funds appropriated to pay for this. This is verified by Claimant's own testimony.

At about the same time, the administration and Dr. Maher's Department Chairman, Dr. Joseph Beaver, made it very clear that not enough money would be available to fund full twelve months' employment for the full faculty and, therefore, professors were advised to take leave, vacations, etc.

Despite being advised of the contingent nature of employment for a full twelve months' period, it is Respondent's contention that Dr. Maher requested he be considered for full employment.

Subsequently, in January of 1973, Dr. Beaver issued a memorandum to Dr. Maher and other faculty members indicating what classes he had each "down for" and advising that the spring schedule would "appear shortly."

In late March, Dean Hudson advised all department chairmen in the College of Arts and Science, in writing, of the vulnerable areas, and it was brought to the attention of the department chairmen that a discrepancy existed in the amount needed for funding a full teaching schedule and the amount actually available.

Dr. Beaver then contacted Dr. Maher and informed him that there was a development whereby one of the courses to be taught by Dr. Maher would probably be eliminated because of low enrollment, and Dr. Maher was asked to assume one of the courses Dr. Beaver was originally scheduled to teach.

On April 20, 1973, Dean Hudson notified individual

faculty members of the specific classes affected by way of a memorandum, and shortly after this memorandum was issued, Dean Hudson directed Dr. Beaver to cancel "Introductory General Linguistics," the class Dr. Beaver had proposed to transfer to Dr. Maher. Dr. Beaver, however, failed to do so, and Dr. Maher taught the class on May 2nd and May 4th, after which time the class was cancelled.

On June 15, 1973, a written offer of employment consistent with the terms stated by Dean Hudson in April 20, 1973, memorandum was issued to Dr. Maher, who later signed and accepted the document under protest, as shown by Claimant's Exhibit B.

The question is—was there or was there not a contract made either by the memorandum dated January 23, 1973, from Dr. Beaver to Dr. Maher, or by any oral communication between the two.

It is elementary in a contract that there must be a complete meeting of the minds between the contracting parties. Where the assent is not final or complete and the parties are merely negotiating as to terms of an agreement to be entered into later, there is no meeting of the minds, and thus, no contract. *Milani v. Proesel, 15 Ill.2d 423.*

The memorandum in question states:

I do not find evidence that I sent each of you the Spring schedule I have you down for. *It will probably appear shortly. Meanwhile,* here it is. (Emphasis added.)

This would strongly intimate that Dr. Beaver was operating only on what he had recommended or what he had an individual "down for" rather than on any final schedule agreed to by the administration when he issued this memorandum. Dr. Maher, under cross-examination, admitted that he was aware that scheduling was "subject to the availability of funds."

It appears from the record that Dr. Maher could not have reasonably believed that the January 23rd memorandum constituted a contractual obligation binding both on the instructor and the University. There is not any reference to compensation or other terms and conditions of employment normally included in any contract of employment, nor does it indicate there was a final offer of employment.

As for an "oral understanding," the record does not show there was any existence of any understanding or agreement as far as a definite contract is concerned.

In addition, both parties recognize the fact that Dr. Beaver had no authority to hire or set salaries, and this fact was admitted by the Claimant who testified that it was the Dean of Faculty who determined such matters.

The conversation relied upon by the Claimant was between Dr. Beaver and Dean Hudson relative to the May-June schedule and a transfer in the teaching schedule from Dr. Beaver to Dr. Maher. These conversations were not directly between Dr. Maher and any member of the University administration having authority to make appointments or set salaries but were merely discussion as to what courses might be offered.

Where a teacher cannot establish that a contract was acceded to by the governing board or its designee having authority to appoint or employ teachers, then no contract is created. *Muehle v. School District No. 38, County of Lake and State of Illinois, et al., 344 Ill.App. 385.*

It is the opinion of this Court that Claimant has failed to sustain his burden of proof with respect to establishing the existence of a contract of employment by and between the Board of Governors of State Colleges and Universities and Dr. Maher.

Claimant's prayer for relief is hereby denied, and the complaint herein is dismissed with prejudice.